**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING**

**JANET LEE ALLEN,**

            **Plaintiff,**

  **v.**                             **Civil Action No.: 5:09-CV-81**
                                        **JUDGE STAMP**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

            **Defendant.**

**REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [23], DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [10], DENY PLAINTIFF'S MOTION FOR LEAVE TO FILE LOST DOCUMENTS [11], AND AFFIRM THE DECISION OF THE ADMINISTRATIVE LAW JUDGE**

## I.    INTRODUCTION

On July 17, 2009, Plaintiff Janet Lee Allen ("Plaintiff"), by counsel Montie VanNostrand, Esq., filed a complaint in this Court to obtain judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner" or "Defendant") pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). On September 22, 2009, the Commissioner, by counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed an answer and administrative transcript of the proceedings. On October 22, 2009 and February 12, 2010, Plaintiff and the Commissioner filed their respective Motions for Summary Judgment [10] [23]. Plaintiff also filed a Motion for Leave to File Lost Documents [11]. Following review of the motions by the parties and the transcript of administrative proceedings, the undersigned Magistrate Judge now issues this Report and Recommendation to the District Judge.

## II.     RELEVANT PROCEDURAL AND FACTUAL BACKGROUND AND REVIEW OF ADMINISTRATIVE LAW JUDGE DECISION

### A.     Procedural Background

On September 29, 2006, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability due to fibromyalgia as of April 1, 2003. Tr. at 142-50, 159-160 & 164. On June 19, 2008, a United States Administrative Law Judge ("ALJ") held a hearing, and Plaintiff testified under oath. Tr. at 21-98. *See* 20 C.F.R. § 404.929 (hearing before an administrative law judge). On December 11, 2008, the ALJ issued an unfavorable decision to Plaintiff, finding her not entitled to a period of disability. Tr. at 6-20.

On May 28, 2009 the Appeals Council denied Plaintiff's request for review on her disability application, which made the ALJ's decision the final decision of the Commissioner. Tr. at 1-3. *See* 20 C.F.R. § 404.967 (Appeals Council review--general); *see also* 20 C.F.R. § 404.981 (Effect of Appeals Council's decision or denial of review). Plaintiff now requests judicial review of the ALJ decision denying her application for disability.

### B.     Standard for Judicial Review of a Decision by the Administrative Law Judge in a Disability Case

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings...are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g). "The findings...as to any fact, if supported by substantial evidence, shall be conclusive" *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The phrase "supported by substantial evidence" means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *See Perales*, 402 U.S. at 401, 91 S. Ct. at 1427 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216 (1938))...Substantial evidence...consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance...Thus, it is not within the province of a reviewing court to determine the weight of the

evidence, nor is it the court's function to substitute its judgment...if the decision is supported by substantial evidence. *See Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *Snyder v. Ribicoff*, 307 F.2d 518, 529 (4th Cir.1962). Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence. *King v. Califano*, 599 F.2d 597, 599 (4th Cir.1979). **"This Court does not find facts or try the case *de novo* when reviewing disability determinations."** *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir.1976); "We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of non-persuasion." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.1972). "The language of the Social Security Act precludes a *de novo* judicial proceeding and requires that the court uphold the decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"

*See Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990) (emphasis added). In applying these legal standards, the Court reviews the decision by the ALJ.

## C.      Standard for Disability and Five-Step Evaluation Process

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work..."[W]ork which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

*See* 42 U.S.C. § 423(d)(2)(A). In order for the ALJ to determine whether a plaintiff is disabled and therefore entitled to disability insurance benefits, the Social Security Administration has established a five-step sequential evaluation process. The five steps are as follows (including Residual Functional Capacity Assessment prior to Step Four):

Step One:     Determine whether the plaintiff is engaging in substantial gainful activity;

Step Two:     Determine whether the plaintiff has a severe impairment;

Step Three:   Determine whether the plaintiff has a "listed" impairment;

* Residual Functional Capacity Assessment *
(Needs to be Determined Before Proceeding to Step Four)

Step Four:    Compare residual functional capacity assessment to determine whether the plaintiff can perform past relevant work;

Step Five:    Consider residual functional capacity assessment, age, education, and work experience to determine if the plaintiff can perform any other work.

*See* 20 C.F.R. § 404.1520 (evaluation of disability in general). In following the five-step process and

coming to a decision, the ALJ makes findings of fact and conclusions of law. This Court will review

the decision by the ALJ to determine whether it is supported by substantial evidence, in accordance

with 42 U.S.C. § 405(g) and *Hays*.

### D.     Review of ALJ Application of Five-Step Evaluation Process and whether it is Supported by Substantial Evidence

### 1.     Step One: Determine whether the Plaintiff is Engaging in Substantial Gainful Activity

Substantial gainful activity is work activity that is both substantial and gainful:

(a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized....

If you are working or have worked as an employee...[g]enerally, in

> evaluating your work activity for substantial gainful activity
> purposes, our primary consideration will be the earnings you derive
> from the work activity...
>
> [I]f you are self-employed [w]e will consider your activities and their
> value to your business to decide whether you have engaged in
> substantial gainful activity...
>
> If you are working and the work you are doing is substantial gainful
> activity, we will find that you are not disabled ***regardless of your
> medical condition*** or your age, education, and work experience.

*See* 20 C.F.R. § 404.1572; *see also* 20 C.F.R. § 404.1574(a) (evaluation guide if you are an

employee); *see also* 20 C.F.R. § 404.1575(a)(2) (evaluation guide if you are self-employed); *see also*

20 C.F.R. § 404.1520(b) (emphasis added). The ALJ found that Plaintiff has not engaged in

substantial gainful activity at any time relevant to this decision. Tr. at 12.

### 2. Step Two: Determine whether the Plaintiff has a Severe Impairment

> At the second step, we consider the medical severity of your
> impairment(s)...[A] severe impairment... [is] any impairment or
> combination of impairments which **significantly limits your
> physical or mental ability to do basic work activities**...We will not
> consider your age, education, and work experience...
>
> An impairment or combination of impairments is not severe if it does
> not significantly limit your physical or mental ability to do basic
> work activities. **Basic work activities...mean[s] the abilities and
> aptitudes necessary to do most jobs. Examples of these
> include--1) Physical functions such as walking, standing, sitting,
> lifting, pushing, pulling, reaching, carrying, or handling; (2)
> Capacities for seeing, hearing, and speaking; (3) Understanding,
> carrying out, and remembering simple instructions; (4) Use of
> judgment; (5) Responding appropriately to supervision,
> co-workers and usual work situations; and (6) Dealing with
> changes in a routine work setting.**

*See* 20 C.F.R. § 404.1520(c) (emphasis added); *see also* 20 C.F.R. § 404.1521; *see also Luckey v.*

*U.S. Dept. of Health & Human Services*, 890 F.2d 666 (4th Cir. 1989). The ALJ found Plaintiff to

have the following severe impairments: fibromyalgia; degenerative disc disease / degenerative arthritis of the cervical, thoracic, and lumbar spine; depressive disorder, not otherwise specified; and anxiety disorder, not otherwise specified. Tr. at 12.

### 3. Step Three: Determine whether the Plaintiff has a "Listed" Impairment

> If you have an impairment(s) that meets or equals one of our listings in appendix 1 of [Subpart P of Part 404] and meets the duration requirement, we will find that you are disabled. *See* 20 C.F.R. § 404.1520(d).

> The Listing of Impairments...describes...impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. *See* 20 C.F.R. § 404.1525(a).

> Most of the listed impairments are permanent or expected to result in death. *See* 20 C.F.R. § 404.1525(a).

> We need evidence from acceptable medical sources (e.g. licensed physicians) to establish whether you have a medically determinable impairment(s). *See* 20 C.F.R. § 404.1513(a).

> To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies ***all of the criteria*** in the listing. *See* 20 C.F.R. § 404.1513(a) (emphasis added).

> ***An impairment that manifests only some of those criteria, no matter how severely, does not qualify****. See Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885 (1990) (emphasis added).

The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing impairment. Tr. at 12.

### * Residual Functional Capacity Assessment *
### (Needs to be Determined Before Proceeding to Step Four)

> If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record...We use our residual functional capacity assessment at

the fourth step of the sequential evaluation process to determine if you can do your past relevant work...and at the fifth step of the sequential evaluation process (if the evaluation proceeds to this step) to determine if you can adjust to other work...

Residual functional capacity assessment. Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations. We will assess your residual functional capacity based on all the relevant evidence in your case record....

Residual functional capacity is a measurement of the most a claimant can do despite his limitations. *See* 20 C.F.R. § 404.1545(a). According to the Social Security Administration, residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Regulation (SSR) 96-8p. Residual functional capacity is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain). *See* 20 C.F.R. § 404.1529(a).

*See* 20 C.F.R. § 404.1520(e); *see also* 20 C.F.R. § 404.1545(a); *see also Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006). The ALJ reviewed Plaintiff's medical evidence, impairments, physical and mental limitations, pain symptoms, daily activities, and credibility; and from the entire record, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work. Tr. at 18. Specifically, the ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 404.1567(b) and 416.967(b). She can perform crouching, stooping, and climbing ramps and stairs only occasionally; changing positions at will; no work in temperature extremes of hot or cold or high concentration of smoke, dust, or odors; no requirement to do jobs that require high production rate or sales, such as telemarketing or assembly line work; no exposure to hazards, such as dangerous moving machinery or unprotected heights; performing simple, routine, 1 to 3 step

tasks; with only occasional contact with others. Tr. at 18.

> *Light work* involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work...

> *Sedentary work* involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met...If someone can do light work, we determine that he or she can also do sedentary work.

*See* 20 C.F.R. § 404.1567 (italics added).

### a.  The ALJ's Evaluation of the Assessment by Plaintiff's Treating Chiropractor

Plaintiff contends that the ALJ gave insufficient reasons for rejecting the assessment of Plaintiff's treating chiropractor, Dr. Paul Lattimer, when determining Plaintiff's residual functional capacity. Pl. Doc. 10 at 11-15.

> Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527. Courts often accord "greater weight to the testimony of a treating physician" because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant. The ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence; rather, "the ALJ holds [the] discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178

(4th Cir. 2001).

*Johnson v. Barnhart*, 434 F.3d 650, 654 & n.5 (4th Cir. 2005). On June 5, 2008, Dr. Lattimer

completed a check mark / fill in the blank type questionnaire. Tr. at 645-53. Dr. Lattimer checked

the question that Plaintiff would require rest periods at regular intervals at work as needed every two

hours. Tr. at 648. Dr. Lattimer also checked that it would be advisable or necessary for Plaintiff to

recline or lie down during the day with her feet up. Tr. at 648. Dr. Lattimer checked that Plaintiff

would need to rest after sitting, standing, or walking for one hour. Tr. at 648. Dr. Lattimer checked

that Plaintiff could "never perform" climbing, balancing, stooping / bending, kneeling, crouching,

crawling, stretching, reaching, or squatting. Tr. at 649. Dr. Lattimer checked that he would expect

Plaintiff to experience the highest level of chronic pain, i.e., "chronic severe." Tr. at 649. Dr.

Lattimer checked that Plaintiff would be absent from work more than twice a month. Tr. at 652.

Finally, Dr. Lattimer checked that Plaintiff would be incapable of performing any full-time job. Tr.

at 652.

### (1)     The ALJ Reviewed Plaintiff's Medical History, Credibility, Pain Symptoms, and Daily Activities to Evaluate the Assessment by Plaintiff's Treating Chiropractor

The ALJ reviewed Plaintiff's medical history, credibility, pain symptoms, and daily activities

to determine whether the evidence in the record supported, and was consistent with, the assessment

by Dr. Lattimer. Tr. at 14-20.

> When additional information is needed to assess the credibility of the
> individual's statements about symptoms and their effects, the
> adjudicator must make every reasonable effort to obtain available
> information that could shed light on the credibility of the individual's
> statements. In recognition of the fact that an individual's symptoms
> can sometimes suggest a greater level of severity of impairment than
> can be shown by the objective medical evidence alone, 20 C.F.R. §
> 404.1529(c) and § 416.929(c) describe the kinds of evidence,
> including the factors below, that the adjudicator must consider in

addition to the objective medical evidence when assessing the credibility of an individual's statements: 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 96-7p. The ALJ used the two-step process and factors in SSR 96-7p and 20 C.F.R. §§ 404.1529 and 416.929 in evaluating Plaintiff's credibility and the assessment by Dr. Lattimer. Tr. at 18-19.

### (a)      The ALJ's Review of the Record from 2003 through 2005

In April 2003, an MRI of the thoracic spine revealed no significant abnormality. Tr. at 403.

In May 2003, an MRI of the cervical spine revealed mild degenerative disc changes, C5-6, but no significant stenosis or neural encroachment or other significant abnormality. Tr. at 404.

On September 16, 2004, Plaintiff had a reevaluation for medicaid disability through with West Virginia Department of Health and Human Resources ("DHHR"). Tr. at 545-50. Plaintiff said she has back, neck, and shoulder pain. Tr. at 546. Plaintiff reported that she lives with her boyfriend who works and pays all the household expenses, and that she takes care of all of her own household chores. Tr. at 547. Plaintiff said she has no problems performing her daily activities. Tr. at 547.

On September 16, 2004, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from painting a room in her home. Tr. at 790.

On September 28, 2004, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported

pain from painting the walls at home. Tr. at 477.

In November 2004, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from carrying in firewood. Tr. at 478.

In January 2005, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from lifting furniture and moving boxes. Tr. at 478.

In March 2005, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from house cleaning. Tr. at 479.

In April 2005, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from washing down the walls in the kitchen and cleaning the cabinets. Tr. at 482.

On June 10, 2005, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from cleaning her car. Tr. at 483.

On June 25, 2005, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from cleaning house. Tr. at 484.

On July 12, 2005, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from babysitting the grandchildren and lifting them. Tr. at 796.

On July 28, 2005, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from mopping and vacuuming the house. Tr. at 798.

On August 11, 2005, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain because she cleaned her car out with a vacuum cleaner and wiped down the windows. Tr. at 485.

On August 28, 2005, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from babysitting and lifting her grandchild. Tr. at 486.

In September 2005, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain

from shampooing carpets. Tr. at 486.

On October 17, 2005, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from mopping at home. Tr. at 487.

On October 22, 2005, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from moving her bedroom around. Tr. at 487.

On November 4, 2005, Plaintiff had a reevaluation for medicaid disability through DHHR. Tr. at 553-58. Plaintiff said that her pain and work limitations were fibromyalgia; irritable bowel; chronic headaches; pain in her back, muscles, ligaments, and tendons; fatigue; depression; and tingling in her hands and feet. Tr. at 554. Plaintiff reported that she can do most of the household cleaning, etc., and that she takes breaks when the pain is too bad. Tr. at 555.

On November 5, 2005, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from cleaning the house. Tr. at 488.

On December 3, 2005, Plaintiff had x-rays of the cervical and thoracic spine. Tr. at 326-27. Three x-ray views of cervical spine showed no radiographic evidence of bone or joint abnormality. Tr. at 326. X-ray views of the thoracic spine showed minimal degenerative change in the mid and lower thoracic spine with no acute bone or joint abnormality. Tr. at 327.

On December 22, 2005, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from lifting her grandson. Tr. at 457.

**(b)     The ALJ's Review of the Record from 2006 through 2008**

In January 2006, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from shampooing carpet. Tr. at 440.

On February 2, 2006, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain

from trying to exercise. Tr. at 440.

On February 28, 2006, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported that her back hurt from doing laundry. Tr. at 439.

In May 2006, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from cleaning the house. Tr. at 438.

In June 2006, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from riding on the train at Cass Railroad and lifting the grandchildren. Tr. at 809.

In July 2006, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from cleaning the house. Tr. at 438.

In September 2006, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from cleaning the house. Tr. at 438.

On October 3, 2006, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from mopping at home. Tr. at 811.

In October 2006, Plaintiff completed a disability report, citing her last appointment with Dr. Lattimer on October 3, 2006 and referencing her next appointment with the United Summit Center on October 30, 2006. Tr. at 163-71. In the disability report, Plaintiff stated that she is "[s]ore and stiff" and "can't sit or stand very long. My back and neck hurt all the time. I can't do *any* lifting. I... have a lot of headaches." Tr. at 164 (italics added).

On October 19, 2006, Plaintiff completed a function report. Tr. at 185-94. Plaintiff said she watches her three year old grandson every two weeks. Tr. at 188. Plaintiff stated that she prepares meals and does laundry, dusting, and dishes. Tr. at 188-89. Plaintiff said her activities include watching television and attending church on Sundays. Tr. at 191. Plaintiff said she is able to drive;

shop for medicine, food, and cleaning supplies; pay bills; and use a checkbook. Tr. at 190.

In December 2006, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from cleaning her daughter's house, vacuuming, and doing laundry. Tr. at 810.

On January 16, 2007, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from cleaning the house and vacuuming. Tr. at 436.

On February 2, 2007, Plaintiff had an evaluation with a rheumatologist, Shelly P. Kafka, M.D. Tr. at 391-99. Plaintiff reported that her symptoms of fibromyalgia began about five years ago. Tr. at 391. Dr. Kafka found good strength in all extremities, normal reflexes, and no neurological defects. Tr. at 394. Dr. Kafka noted extreme tenderness in the upper trapezius muscles. Tr. at 394. She also found tenderness at the midscapular regions, at the paraspinous muscles of the thoracic spine, along the costochondral region of the left rib cage, over both SI joint regions, and at the IP joint of the left thumb. Tr. at 393-94. Dr. Kafka noted that Plaintiff's lumbar, shoulders, elbows, wrists, hips, and ankles were within normal limits and had good range of motion. Tr. at 393-94. Dr. Kafka found mild crepitus in Plaintiff's knees. Tr. at 393. Dr. Kafka reported that Plaintiff was a 46 year old female with primary fibromyalgia and some degenerative arthritis mainly in the cervical spine, lower spine, and hands. Tr. at 393. Dr. Kafka prescribed Zanaflex to help sleep cycles, Tramadol as needed for pain control, and Meloxicam to replace the Sulindac. Tr. at 393. Dr. Kafka recommended exercise and that she may return for follow-up as needed. Tr. at 393.

On February 8, 2007, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported being pain from cleaning the house. Tr. at 435.

On February 22, 2007, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from vacuuming and doing laundry. Tr. at 435.

In March 2007, Plaintiff saw her family physician, Arturo Sabio, M.D., for complaints of hoarseness and muscle pains. Tr. at 498. Dr. Sabio diagnosed Plaintiff with GERD and fibromyalgia and prescribed medications. Tr. at 498. Dr. Sabio completed a form for DHHR stating that Plaintiff has back and neck pains, muscle soreness all the time, and it worsens with activity. Tr. at 520. Dr. Sabio noted that Plaintiff is under the car of Dr. Kafka, a rheumatologist, and that treatment included physical therapy and medications. Tr. at 521.

On April 16, 2007, Plaintiff saw her family physician, Dr. Sabio, for complaints of pain in her abdomen related to fatty food intake. Tr. at 490.[1]

On April 18, 2007, Plaintiff had a reevaluation for medicaid disability through DHHR. Tr. at 522-33. Plaintiff reported that she does not need help with her daily living activities. Tr. at 530.

In May 2007, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from walking at the Game Farm with all her family. Tr. at 631.

In June 2007, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from cleaning her house. Tr. at 631.

In December 2007, Plaintiff went to the Braxton Community Health Center, and the medical provider noted that Plaintiff's neck was tight but her range of motion was good. Tr. at 702.

On January 3, 2008, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from babysitting the grandchildren and lifting her one year old grandchild. Tr. at 629.

On January 15, 2008, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from cleaning the house and running the vacuum. Tr. at 628.

On January 31, 2008, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain

---

[1] The information relating to Dr. Sabio is included because of Plaintiff's assertion of the importance of his records. Pl. Doc. 10 at 10, 13 & 15; Pl. Doc. 11. at 1.

from cleaning the house and doing laundry. Tr. at 628.

In February 2008, Plaintiff completed a case history form for her chiropractor, Dr. Lattimer, and she checked that she can hardly do any work at all and that she can hardly do any recreational activities because of the pain in her neck. Tr. at 636-37.

In April 2008, Plaintiff again went to the Braxton Community Health Center. Tr. at 696. She reported that her neck pain was still present. Tr. at 696. She said that physical therapy did not help but chiropractic helped some. Tr. at 696.

On May 23, 2008, Plaintiff had a psychological evaluation with Sharon J. Joseph, Ph.D. Tr. at 654-60. Plaintiff said her daily living activities consist of making her bed, washing dishes, dusting, and occasionally cooking meals. Tr. at 659. Plaintiff will sometimes go grocery shopping and put the groceries away, with the help of a friend. Tr. at 659. She can go up and down stairs a little. Tr. at 659. She can take out the garbage, and she is able to drive. Tr. at 659. Plaintiff said she goes shopping with a friend, talks to her sisters, and goes to church. Tr. at 659.

On May 29, 2008, Plaintiff went to her chiropractor, Dr. Lattimer, and she reported pain from cleaning the house. Tr. at 621-23.

On June 5, 2008, Dr. Lattimer completed a check mark / fill in the blank type questionnaire. Tr. at 645-53. Dr. Lattimer checked the question that Plaintiff would require rest periods at regular intervals at work as needed every two hours. Tr. at 648. Dr. Lattimer also checked that it would be advisable or necessary for Plaintiff to recline or lie down during the day with her feet up. Tr. at 648. Dr. Lattimer checked that Plaintiff would need to rest after sitting, standing, or walking for one hour. Tr. at 648. Dr. Lattimer checked that Plaintiff could "never perform" climbing, balancing, stooping / bending, kneeling, crouching, crawling, stretching, reaching, or squatting. Tr. at 649. Dr. Lattimer

checked that he would expect Plaintiff to experience the highest level of chronic pain, i.e., "chronic severe." Tr. at 649. Dr. Lattimer checked that Plaintiff would be absent from work more than twice a month. Tr. at 652. Finally, Dr. Lattimer checked that Plaintiff would be incapable of performing any full-time job. Tr. at 652.

On June 19, 2008, at the ALJ hearing, Plaintiff testified that she has trouble with her upper back, neck, and has constant headaches. Tr. at 44. Plaintiff said she can stand for about 20 minutes and cannot lift 10 pounds several times a day. Tr. at 55-56. She stated that she takes Lortab and over the counter ibuprofen for pain and headaches . Tr. at 45 & 56. Plaintiff said she tried physical therapy a couple months prior but it made the pain worse. Tr. at 47. She said she uses a heating pad and ice on her neck. Tr. at 45. Plaintiff said she goes to the chiropractor because her neck, back, and hips are always "out." Tr. at 45. She said she cannot grip anything to open jars and things because her hands hurt. Tr. at 56. Plaintiff said her daily activities include doing a little laundry, dusting, and dishes. Tr. at 48. She said she occasionally watches her grandchildren when her boyfriend is also at home. Tr. at 51.

### (2) Conclusion by the ALJ as to Plaintiff's Credibility and the Assessment of Plaintiff's Treating Chiropractor

After considering the evidence in the record, the ALJ found that Plaintiff's medically determinable impairments could reasonably produce her alleged symptoms, but Plaintiff's statements concerning the intensity, duration, and limiting effects of those symptoms were not entirely credible. Tr. at 19. The ALJ concluded that Plaintiff's medical history, credibility, pain symptoms, and daily activities were not consistent with the objective evidence of record or the reports made to her treating physicians; and therefore, the ALJ was unable to attribute significant weight to Dr. Lattimer's assessment. Tr. at 19. The ALJ concluded as follows:

Dr. Lattimer's treatment record indicates that the claimant is able to perform the activities that she wants to perform, when she wants to perform them. She can lift and care for her grandchildren. The claimant is able to go on day trips to State Parks, scrub down walls, shampoo carpets, vacuum, and clean out cabinets. She testified at the hearing that she is unable to lift even 10 pounds. Yet, she told Dr. Lattimer that she lifted her one year old grandchild when she was babysitting. A one year old weighs considerably more than 10 pounds...

The claimant has exaggerated her symptoms and limitations...The claimant has reported driving, shopping for groceries, riding the train at Cass, walking the Game Farm with her family, attending church, cleaning her home, laundering clothes, caring for and lifting her grandchildren, vacuuming and shampooing her carpets, scrubbing and painting walls, cleaning out cabinets, talking on the telephone, watching television, and caring for her personal needs. Surely, if the claimant is able to do all of these things, she is able to perform some work-related activities on a regular and sustained basis.

Tr. at 19. Substantial evidence supports the ALJ's finding to not give significant weight to the opinion of Dr. Lattimer.

### b.      Whether the ALJ Considered the Psychological Assessment

Plaintiff contends that the ALJ failed to indicate the weight assigned to the psychological assessment by Sharon J. Joseph, Ph.D., when determining Plaintiff's residual functional capacity. Pl. Doc. 10 at 11 & 15. However, the ALJ noted that in May 2008, Plaintiff's attorney referred her for a psychological evaluation with Dr. Joseph, and the ALJ reviewed the psychological evaluation in detail. Tr. at 14-16. The ALJ noted that Dr. Joseph found that Plaintiff's socialization was "mildly" impaired, that her pace and persistence were "within normal limits," that her immediate and remote memory were "within normal limits," that her recent memory was considered "remarkably" impaired, that her concentration was "mildly" impaired, that Plaintiff would have "moderate" limitations in sustaining attention and concentration for extended periods or maintaining

attendance and punctuality and understanding, remembering, and carrying out simple, short instructions and exercising judgment or making simple work related decisions, and that Plaintiff would have "marked" limitations in understanding, remembering, and carrying out detailed instructions.

In evaluating Plaintiff's social functioning, the ALJ noted that in October 2006, Plaintiff completed a function report and said that she gets along "good" with authority figures and checked that she had never been fired or laid off from a job because of problems getting along with other people. Tr. at 193.

The ALJ noted that he made his residual functional capacity assessment of Plaintiff after careful consideration of the entire record. Tr. at 18. The ALJ incorporated elements of Dr. Joseph's findings into the assessment by limiting Plaintiff to "performing simple, routine, 1 to 3 step tasks with only occasional contact with others." Tr. at 18. Therefore, the ALJ properly considered Dr. Joseph's opinion, and substantial evidence supports his residual functional capacity assessment of Plaintiff.

### c.      Residual Functional Capacity Assessment Conclusion by the ALJ

The ALJ reviewed Plaintiff's medical evidence, impairments, physical and mental limitations, pain symptoms, daily activities, and credibility; and from the entire record, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work. Tr. at 18-20. Substantial evidence supports the ALJ's residual functional capacity assessment that Plaintiff can perform light work.

### 4.      Step Four: Compare Residual Functional Capacity Assessment to Determine whether the Plaintiff Can Perform Past Relevant Work

At the fourth step, we consider our assessment of your residual

> functional capacity and your past relevant work.
> 20 C.F.R. § 404.1520(a).
>
> Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it.
> 20 C.F.R. § 404.1560(b).
>
> Your impairment(s) must prevent you from doing your past relevant work. If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment...with the physical and mental demands of your past relevant work. (See § 404.1560(b).) If you can still do this kind of work, we will find that you are not disabled.
> *See* 20 C.F.R. § 404.1520(f).

In the 2008 ALJ decision pending on appeal before this Court, the ALJ found that Plaintiff can perform her past relevant work of light housekeeping. Tr. at 20.

### a.     The ALJ Relied on Vocational Expert Testimony to Find that Plaintiff Can Perform her Past Relevant Work, which Differed from a Prior ALJ Decision

Plaintiff contends that the ALJ should be bound to the Step Four finding made in a prior 2006 disability decision. Pl. Doc. 10 at 5-8. In the prior 2006 decision, the ALJ concluded in Step Four that Plaintiff could not perform her past relevant work. Tr. at 892-93. In the prior 2006 decision, the ALJ denied Plaintiff disability benefits in Step Five. Tr. at 893-94.

In the current 2008 decision, the ALJ found that Plaintiff can perform her past relevant work as a housekeeper after hearing the testimony from the vocational expert. Tr. at 20. The vocational expert testified that based on Plaintiff's residual functional capacity, she can perform her past relevant work of light housekeeping at the Days Inn. Tr. at 82 & 84-85. In the prior 2006 decision, the vocational expert testified that Plaintiff could not perform her past relevant work of light housekeeping because it did not allow for a sit / stand option. Tr. at 892-93. However, in the current 2008 decision, the vocational expert testified that Plaintiff's past relevant work of light

housekeeping does allow for a sit / stand option. Tr. at 84-85 & 89. Therefore, the ALJ found that Plaintiff can perform her past relevant work based on the testimony of the vocational expert. Accordingly, the ALJ's decision only differed from the prior decision due to the testimony of the vocational expert.

> The ALJ solicited testimony from the vocational expert as to whether a person of [the claimant's] age, education, [and] past work experience, [would be] capable of performing light work...in the national economy...

> Th[e] hypothetical encompasses all the limitations which the ALJ found were suffered by the claimant. The vocational expert's testimony was in response to a hypothetical that fairly set forth every credible limitation established by the physical evidence. As such, it can be relied upon as substantial evidence supporting the ALJ's conclusion that [the claimant] is not totally disabled. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3rd Cir. 1987.) The vocational expert testified the claimant was capable of performing work activity as a restaurant hostess, a business escort, and a light security worker. He also testified these jobs exist in significant numbers in both the local and national economy. 20 C.F.R. § 404.1566(a). This satisfies the ALJ's burden of establishing there are jobs available which the claimant can perform given her "severe" disability.

*See Plummer v. Apfel*, 186 F.3d 422 (3rd Cir. 1999). Thus, the ALJ could properly rely on the vocational expert's testimony when determining whether Plaintiff can perform her past relevant work.

### b.     AR 00-1(4) and the Prior ALJ Decision

Plaintiff cites Acquiescence Ruling 00-1(4) in support of finding that she cannot perform her past relevant work. Pl. Doc. 10 at 5-8.

> When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and

circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as:

(1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition;

(2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and

(3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

Where the prior finding was about a fact which is subject to change with the passage of time, such as a claimant's residual functional capacity, or that a claimant does or does not have an impairment(s) which is severe, the likelihood that such fact has changed generally increases as the interval of time between the previously adjudicated period and the period being adjudicated increases. An adjudicator should give greater weight to such a prior finding when the previously adjudicated period is close in time to the period being adjudicated in the subsequent claim, *e.g.*, a few weeks as in *Lively v. Secretary of Health and Human Services*, 820 F.2d 1391 (4th Cir. 1987). An adjudicator generally should give less weight to such a prior finding as the proximity of the period previously adjudicated to the period being adjudicated in the subsequent claim becomes more remote, *e.g.*, where the relevant time period exceeds three years as in *Albright v. Commissioner of the Social Security Administration*, 174 F.3d 473 (4th Cir. 1999). In determining the weight to be given such a prior finding, an adjudicator must consider all relevant facts and circumstances on a case-by-case basis.

*See* AR 00-1(4), Westlaw Citation: 65 FR 1936-01. In the instant case, the ALJ considered the 2006 decision but found that based on the vocational expert's testimony, Plaintiff can perform her past relevant work. Tr. at 9, 20 & 24.

**c.       Plaintiff's Motion to Include Lost Documents [Doc. 11] and the Record of the Prior ALJ Decision**

In October 2009, Plaintiff filed a motion with this Court to include lost documents [Pl. Doc.

11]. In February 2010, the Commissioner supplemented the record to include the prior 2006 ALJ decision [Comm'r Doc. 21]. Plaintiff argues that the ALJ erred by not including the prior 2006 decision and for failing to consider the evidence from the prior claim. Pl. Doc. 10 at 5-8. However, the ALJ did consider the prior 2006 ALJ decision when making his findings. Tr. at 9 & 24. Moreover, the ALJ permitted Plaintiff to include "the most important exhibits from the prior application." Tr. at 25 (ALJ hearing); Tr. at 704-877 (exhibits from prior application). The Commissioner also responded that substantially all of the "lost documents" that Plaintiff submitted were already in the record and some of the cited "lost documents" were not relevant to Plaintiff's disability claim. Comm'r Doc. 24 at 10-11. Therefore, the ALJ properly considered the evidence and the prior decision from the 2006 application. Accordingly, the Court denies Plaintiff's motion to include lost documents [11].

### d.      The ALJ Determined Not to Reopen the Prior ALJ Decision

Plaintiff contends that the ALJ failed to associate or reopen the prior disability application. Pl. Doc. 10 at 5-8. However, the ALJ's decision to reopen prior applications is discretionary.

> A determination, revised determination, decision, or revised decision *may* be reopened – (a) Within 12 months of the date of the notice of the initial determination, for any reason; (b) Within four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.989, to reopen the case...

20 C.F.R. § 404.988 (italics added). Thus, reopening disability applications is not mandatory. Plaintiff argues that the ALJ may have found "new and material evidence." Pl. Doc. 10 at 8. However, the ALJ did include 174 pages of the "the most important exhibits from the prior application," and the ALJ did not find any "new and material evidence." Tr. at 9. Therefore, in accordance with 20 C.F.R. § 404.988, the ALJ was not required to reopen the prior 2006 application.

**e. Whether the Appeals Council Considered Plaintiff's Brief and Additional Evidence**

Finally, Plaintiff argues that the Appeals Council failed to consider the brief she filed or the additional evidence she submitted on appeal. Pl. Doc. 10 at 8-10. However, there is no evidence to support this allegation. Tr. at 1-3. The decision by the Appeals Council states that they reviewed Plaintiff's case to see whether: there is an abuse of discretion; there is an error of law; the decision is not supported by substantial evidence; there is a policy or procedural issue that may affect public interest; and whether they received evidence that is new and material and would change the ALJ decision. *See* Tr. at 1. The decision further states that the Appeals Council considered the reasons that Plaintiff disagreed with the ALJ decision and that this information does not provide a basis for changing the decision. *See* Tr. at 1-2. Therefore, there is no evidence to support Plaintiff's allegation that the Appeals Council did not consider her brief or her additional evidence.

**f. Conclusion by the ALJ that Plaintiff Can Perform her Past Relevant Work**

After determining Plaintiff's residual functional capacity; hearing the vocational expert's testimony; considering the prior 2006 ALJ decision; and reviewing the exhibits submitted by Plaintiff from the prior 2006 application, the ALJ found that Plaintiff can perform her past relevant work. Tr. at 20. Substantial evidence supports the ALJ's conclusion that Plaintiff can perform her past relevant work.

**5.  Step Five: Consider Residual Functional Capacity Assessment, Age, Education, and Work Experience to Determine if the Plaintiff Can Perform Any Other Work**

At the fifth and last step...

[i]f we find that your residual functional capacity is not enough to enable you to do any of your past relevant work, we will use the same residual functional capacity assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work. We will look at your ability to adjust to other work by considering your residual functional capacity and your vocational factors of age, education, and work experience. Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

*See* 20 C.F.R. § 404.1520(a); *see also* 20 C.F.R. § 404.1560(c).

Plaintiff contends that the ALJ did not complete the sequential evaluation process because he did not evaluate whether Plaintiff can perform any other work. Pl. Doc. 10 at 10-11. However, since the ALJ found that Plaintiff can perform her past relevant work, the evaluation process would naturally terminate at Step Four.

Substantial evidence...consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance...Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment...if the decision is supported by substantial evidence.  *See Laws*, 368 F.2d at 642; *Snyder*, 307 F.2d at 529. **Ultimately, it is the duty of the administrative law judge reviewing a case, and *not* the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.** *King*, 599 F.2d at 599. "This Court does not find facts or try the case *de novo* when reviewing disability determinations." *Seacrist*, 538 F.2d at 1056-57; "We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of non-persuasion." *Blalock*, 483 F.2d at 775.

> **"The language of the Social Security Act precludes a *de novo* judicial proceeding and requires that the court uphold the decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"**

*See Hays*, 907 F.2d at 1456 (emphasis added). Therefore, this reviewing Court will uphold the ALJ's decision that Plaintiff can perform light work and her past relevant work because it is supported by substantial evidence.

In conclusion, the ALJ found that based on the Plaintiff's application filed on September 29, 2006, the Plaintiff is not entitled to disability insurance benefits and supplemental security income. Tr. at 20. The Court finds that substantial evidence supports the ALJ's decision that Plaintiff is not disabled and can perform work in the national economy.

## III.        RECOMMENDATION AND CONCLUSION

The undersigned Magistrate Judge hereby **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Summary Judgment **[23]**, **DENY** Plaintiff's Motion for Summary Judgment **[10]**, **DENY** Plaintiff's Motion for Leave to File Lost Documents **[11]**, and **AFFIRM** the Decision of the Administrative Law Judge. The Court notes the Plaintiff's objections to the ruling.

Within fourteen (14) days of receipt of service of this Report and Recommendation, any counsel of record may file with the Clerk of the Court any written objections to this Report and Recommendation. The party should clearly identify the portions of the Report and Recommendation to which the party is filing an objection and the basis for such objection. The party shall also submit a copy of any objections to the District Judge. Failure to timely file objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon this Report and Recommendation. 28 U.S.C. § 636(b)(1).

The Court directs the Clerk of the Court to provide a copy of this Report and

Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: March 22, 2010**

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE